**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

REX SHRUM,                       )
                                 )
            Plaintiff,           )
                                 )
v.                               )    Case No. CIV-03-465-KEW
                                 )
CITY OF COWETA, OKLAHOMA,        )
a municipal corporation;         )
STEVEN C. WHITLOCK;              )
and DERRICK PALMER,              )
individually,                    )
                                 )
            Defendants.          )

**OPINION AND ORDER**

This matter comes before the Court on Defendants City of Cowets and Derrick Palmer's Renewed Motion for Judgment as a Matter of Law and, in the Alternative, Motion to Correct, Alter and Amend Judgment filed April 13, 2007 (Docket Entry #136). This motion is at issue and ripe for ruling.

Plaintiff Rex Shrum ("Shrum") was employed with Defendant City of Coweta as a city police officer. This action proceeded to jury trial on federal claims based in 42 U.S.C. § 1983 for the alleged violation of his First Amendment right to associate by engaging in union activities against Defendants City of Coweta (the "City"), Derrick Palmer, individually ("Palmer") and First Amendment right to freely exercise his religion against Palmer. Shrum also brought a state law claim for violation of the Oklahoma Religious Freedom Act against both Defendants.

On February 22, 2007, a jury rendered verdicts in favor of

Shrum and against Defendants on the claims asserted in this case. Specifically, the jury found through an interrogatory that Palmer changed Shrum's "work schedule knowing it would interfere with Plaintiff's religious commitment." The jury then found in favor of Shrum and against Palmer on the free exercise of religion constitutional claim. The jury also found in favor of Shrum and against Palmer on his freedom of association claim. Again, the jury answered a special interrogatory, finding Palmer took adverse employment action against Shrum for engaging in union activities. With regard to both claims, the jury found Palmer would not have reached the same decision on the adverse employment action taken against Shrum if he had not exercised his religious rights or engaged in union activities. The jury also found for Shrum on the state law claim based in a violation of the Oklahoma Religious Freedom Act.

In compensation for the injuries alleged, the jury awarded Shrum compensatory damages for the violation of both the free exercise of religion constitutional claim and the Oklahoma Religious Freedom Act claim in the amount of $25,000.00 attributable to emotional distress and mental anguish. The jury also awarded punitive damages for the violation of that claim in the amount of $25,000.00. Compensatory damages were awarded against Palmer and in favor of Shrum on the violation of Shrum's associational rights in the amount of $25,000.00, also attributable

to emotional distress and mental anguish. Punitive damages in connection with this claim was also awarded in the amount of $25,000.00.

With regard to the claims against the City, the jury answered affirmatively when posed the interrogatory of whether the City maintained a policy, practice, custom, ordinance, regulation, decision or widespread practice resulting in the interference of Shrum's right to engage in union activity. Based upon this finding, the jury found in favor of Shrum and against the City on the constitutional claim for violation of Shrum's right to associate. In a second interrogatory, the jury found the City would not have reached the same decision on the adverse employment action it took against Shrum if he had not engaged in union activity. The jury also found in favor of Shrum and against the City on the claim alleging a violation of the Oklahoma Religious Freedom Act.

On the freedom of association constitutional claim, the jury awarded Shrum compensatory damages for lost pension benefits in the amount of $125,000.00 and emotional distress and mental anguish damages of $40,000.00. In compensation for the violation of the Oklahoma Religious Freedom Act, the jury awarded $125,000.00 in lost pension benefits and $60,000.00 in emotional distress and mental anguish damages.

Palmer and the City now move for renewal of their previously

asserted motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, alternatively, motion to correct, alter, or amend the judgment in accordance with Fed. R. Civ. P. 59(e). Defendants contend they are entitled to judgment as a matter of law post-trial and verdict on the following stated bases: (1) the evidence demonstrated Shrum's termination of employment resulted from a voluntary resignation and not a constructive discharge, as would be required to prevail under the theories asserted by Shrum; (2) Shrum did not suffer an adverse employment action; (3) the City may not be held liable for the actions of Palmer, since he was not a final policymaker for the City; (4) Palmer may not be held liable under the Oklahoma Religious Freedom Act; (5) Shrum's grievances and arbitrations involving the union were not matters of public concern such that they are actionable under a constitutional claim based in a violation of the freedom of association; (6) Shrum did not establish the value for the loss of his pension rights; (7) the First Amendment only protects Shrum's right to freely exercise his religion in connection with the enactment or enforcement of a law - something Shrum did not assert or prove in this case; and (8) Shrum failed to prove Defendants used the transfer to the day shift in his employment expressly for the purpose of interfering with Shrum's religion or to force Shrum to resign.

The City also seeks to alter the jury's damage award for loss of pension rights in the amount of $125,000.00. The City asserts

Shrum's expert testified at trial the value of said rights was $49,216.82 and $62,121.48, with interest and, therefore, the higher award provided by the jury is not sustainable based upon the evidence.

I. **Standard in Evaluating Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b)**

The standard on a Rule 50(b) motion requires that this Court view the evidence in the light most favorable to Shrum as the non-moving party and grant the motion "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party for whom the jury found." Ensminger v. Terminix International Co., 102 F.3d 1571, 1573 (10th Cir. 1996) citing Zimmerman v. First Federal Savings & Loan Ass'n of Rapid City, 848 F.2d 1047, 1051 (10th Cir. 1988); *see also*, Tyler v. Re/Max Mountain Estates, 232 F.3d 808, 812 (10th Cir. 2002)("Judgment as a matter of law is appropriate 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'"). The court cannot weigh the evidence, pass on the credibility of witnesses or substitute the court's conclusions for those of the jury. Harold Stores, Inc. v. Dillard Dept. Stores, Inc., 82 F.3d 1533, 1546 (10th Cir. 1996) citing Magnum Foods, Inc. v. Continental Casualty Co., 36 F.3d 1491, 1503 (10th Cir. 1994). However, the moving party is entitled to judgment as a matter of law if "there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . .

under the controlling law." Id. at 1546-47. It is against this legal backdrop that Defendants' claims of error are cast.

**II. Constructive Discharge**

Defendants first contend Shrum voluntarily resigned his employment with the City and was not constructively discharged. The jury in this case was instructed as to the standard required in order to find Plaintiff was constructively discharged. Specifically, Instruction No. 17 directed the jury that:

> Constructive discharge occurs when the employer by its illegal acts has made working conditions so intolerable that a reasonable person in the employee's position would feel compelled to resign; that is, he had no other choice but to quit. The employee's subjective views of the situation are irrelevant.

Defendants, neither at the time of trial nor in the current briefing, suggest that this instruction represents a misstatement of the law. Defendants cite to the case of Yearous v. Niobrara Co. Mem. Hosp., 128 F.#d 1351 (10th Cir. 1997) and the various factors to be considered in determining whether a resignation is voluntary. These factors are largely contained within the instruction provided to the jury.

Moreover, the evidence at trial supports a finding that a reasonable person in Shrum's position would have felt compelled to resign under the circumstances Shrum found himself. Shrum's obligations as a pastor was known by Palmer and Whitlock, the City of Coweta city manager. Palmer was aware the change in Shrum's

6

work schedule conflicted with his pastoral duties on Sunday. Yet, Palmer would not consider any accommodations suggested by Shrum or others to alleviate the conflict. Palmer testified he would have terminated Shrum if he did not work on Sundays as directed. Under these circumstances, it is entirely reasonable for a jury to conclude Shrum that he was forced to choose between exercising his religious rights or remaining employed with the City. Faced with this conflict, a reasonable person could certainly have believed the situation to be so intolerable that he had no choice but to resign.

Defendants suggest the limited length of time between the change in Shrum's schedule and his authorship of his letter of resignation indicates the situation could not have been so intolerable. Indeed, Defendants appear to argue he should have asked more questions and considered his options for a longer period of time before resigning. The question under the circumstances Shrum faced is "to what end?" Palmer had shown no interest in negotiating the altered schedule or allowing another officer to switch schedules with him to accommodate his pastoral schedule on Sundays. Palmer's only reaction to Shrum's resignation was he respected his decision to leave. From the evidence presented, the passage of more time and more deliberation would not have altered the ultimate outcome and is not determinative of whether Shrum was

7

constructively discharged. This Court must conclude that under the facts present in this case a reasonable jury could conclude Shrum was constructively discharged from the City.

**III. Adverse Employment Action**

Defendants next contend that should this Court conclude Shrum was not constructively discharged, he suffered no adverse employment action. This Court has found such a discharge and, therefore, Shrum has suffered an adverse action.

**IV. Final Policymaker**

The City argues it cannot be held liable for the actions of Palmer, since the city manager and not the chief of police is the final policymaker for the City. This Court may only instruct the jury on the law and expect them to follow it. The jury in this case was instructed on the source of municipal liability in Jury Instruction No. 13, which read:

> Plaintiff Rex Shrum claims that Defendant City of Coweta, a municipality, is liable to him for the constitutional deprivations that he alleges. You are instructed that Defendant City of Coweta may be liable where you find that Plaintiff has been deprived of his constitutional rights and such deprivation was done pursuant to a governmental custom, policy, ordinance, regulation, decision, or existence of a widespread practice to the end that there is a custom or usage with the force of law. When Plaintiff is injured as a result of a government's policy, custom, regulation, or decision whether made by its lawmakers or by the municipality's final policymaker, the city itself is responsible for the injury it caused. The municipality may also be liable if a final policymaker ratifies a subordinate's

8

> recommendation and the basis for it.
>
> In this case, Plaintiff Rex Shrum seeks to hold Defendant City of Coweta responsible for the act or decision of Defendant Derrick Palmer. You may find Defendant City of Coweta liable for the act or decision of its official if you believe that he had the authority to establish a policy for Defendant City of Coweta with regard to the decision he made or the action he took that allegedly caused injury to Plaintiff Rex Shrum. In other words, Defendant City of Coweta can be held liable if the official's act or decision can fairly be said to represent the official policy of Defendant City of Coweta.

The jury either concluded (1) the City maintains a policy or custom which is violative of Shrum's constitutional rights; (2) the City ratified, through a final policymaker, the actions of one without final policymaking authority which were violative of Shrum's constitutional rights; and/or (3) Palmer was a final policymaker for the City, making the City liable for his actions in violating Shrum's constitutional rights. All of these theories have support in the evidence presented at trial.

The actions of the City in opposing or, at the very least, resisting union activity were presented in the evidence. The City, through its admitted final policymaker, Whitlock, could be viewed to have ratified the actions of Palmer. Palmer certainly had the authority on behalf of the City to take the actions against Shrum that he took. The City's source of liability has been established for the jury to find in Shrum's favor on the claims against it.

**V. Palmer's Liability under the Oklahoma Religious Freedom Act**

Palmer contends he cannot be held liable under the Oklahoma Religious Freedom Act because it is a tort and his tort liability is precluded by the Oklahoma Governmental Tort Claims Act. The question of whether the Oklahoma Religious Freedom Act authorizes a tort action appears to be one of first impression either in the Oklahoma state or federal courts.

It is clear that the Oklahoma Governmental Tort Claims Act prohibits the naming of an employee of a state or political subdivision who is acting within the scope of his employment in any action based in tort. Okla. Stat. tit. 51 § 163(C). This Court would first note as a practical matter that the Oklahoma Religious Freedom Act is located in the Oklahoma statutes under the title and chapter containing the Oklahoma Governmental Tort Claims Act. Okla. Stat. tit. 51 § 251, *et seq.* However, this placement in the statutes does not necessarily answer the issue. An examination of the precise legal action authorized by this statute is determinative.

The objective of the Oklahoma Religious Freedom Act is stated as to preclude a "governmental entity" from "substantially" burdening "a person's free exercise of religion." Okla. Stat. tit. 51 § 253(A). A "governmental entity" is defined as "any branch, department, agency, or instrumentality of state government, or **any**

**official or other person acting under color of state law**, or any political subdivision of this state." Okla. Stat. tit. 51 § 252(5) (emphasis added by this Court). The "exercise of religion" is defined as "the exercise of religion under Article 1, Section 2, of the Constitution of the State of Oklahoma, the Oklahoma Religious Freedom Act, and the First Amendment of the Constitution of the United States." Okla. Stat. tit. 252(2).

The entities to be held liable under the Oklahoma Religious Freedom Act differs from those protected under the Oklahoma Governmental Tort Claims Act. Specifically, the defined "governmental entity" under the Oklahoma Religious Freedom Act does not equate with the "employee" defined and protected under the Oklahoma Governmental Tort Claims Act. Okla. Stat. tit. 51 § 152(6). Moreover, the use of the "acting under color of state law" language in the Oklahoma Religious Freedom Act is indicative of the officials whose conduct warrant civil rights protections rather than imposing tort liability.

This Court is also persuaded by the analogous reasoning employed by Shrum in his citation to the Duncan v. City of Nichols Hills, 913 P.2d 1303 (Okla. 1996) case. The Duncan case involved a private action brought pursuant to Oklahoma's anti-discrimination statutes. Okla. Stat. tit. 25 § 1101, *et seq.* The issue before the court concerned whether the plaintiff was required to comply

with the noticing and statute of limitations established by the Oklahoma Governmental Tort Claims Act in bringing a handicap discrimination action – that is, whether the action was a tort or a civil rights claim. The Oklahoma Supreme Court concluded

> We find it apparent from the language of the two acts that the legislature intended the Governmental Tort Claims Act to apply to tort actions brought against the state or a political subdivision, whereas the Oklahoma Anti-Discrimination statutes were intended to provide redress for the types of discrimination embodied in the federal Civil Rights Acts, even where the action is brought against the state or a political subdivision.
>
> <u>Duncan v. City of Nichols Hills</u>, 913 P.2d 1303, 1308 (Okla. 1996).

As such, the notice and immunity provisions of the Oklahoma Governmental Tort Claims Act did not apply to actions brought under the Oklahoma anti-discrimination statutes.

Similar in its construction to the Oklahoma anti-discrimination statutes, the Oklahoma Religious Freedom Act finds its foundation in the Oklahoma and United States Constitutions' guarantees of religious freedom. Not unlike its counterpart in federal law 42 U.S.C. § 1983, implicit in this bedrock statement is necessarily authorization that a violation of the Act's provisions results in a civil rights claim for which declaratory or monetary damages as well as attorney's fees and costs may be awarded. Okla. Stat. tit. 51 § 256. As a result of this expression of civil rights protection, this Court concludes the violation of the

Oklahoma Religious Freedom Act does not give rise to tort liability, subject to the provisions of the Oklahoma Governmental Tort Claims Act.

This Court has reviewed the decision of Brown v. Creek Co. *ex rel.* Creek Co. Bd. of Co. Comm., 164 P.3d 1073 (Okla. 2007), with regard to which Defendants requested and obtained the opportunity to submit supplemental briefing. In Brown, an inmate brought a negligence action against the county and two individual medical defendants. The action was removed to federal court. In conflict were two Oklahoma statutes of limitations - one established under the Governmental Tort Claims Act and one under the general limitations statute. The Oklahoma Supreme Court ultimately determined the more specific statute of the Governmental Tort Claims Act prevailed, under its specific statutory terms and under the long-established theorem that specific statutes govern over general statutes. Id. at 1076.

The result in Brown is neither surprising nor earth-shattering. It does not, as Defendants suggest, establish that the Oklahoma Governmental Tort Claims Act lords over all other Oklahoma laws in all aspects including its application. The provisions of the statutes and the specific and express language used in each must still govern their enforcement. Those provisions of the two laws at issue in this case demonstrate they are distinct with

13

separate goals of redress - one governing torts, the other providing a remedy for the violation of a person's civil rights.

**VI. Grievances and Arbitrations Not Matters of 'Public Concern'**

Defendants assert that freedom of association claims are subject to the "public concern" analysis under Pickering v. Board of Educ., 391 U.S. 563 (1968). This Court has addressed this issue in the Order entered April 1, 2004 and the Tenth Circuit's Order of June 8, 2006 rejected Defendants' position on this issue.

**VII. The Value of Plaintiff's Lost Pension Benefits**

Defendants contend Plaintiff failed to establish the value of his lost pension benefits at trial. This Court finds that Shrum established the value of the benefits through the testimony of his expert, Thomas Cummins with sufficient certainty such that a reasonable jury could have a foundation for awarding damages for the loss of the benefits.

**VIII. First Amendment Protection of Religious Rights**

Defendants state that the First Amendment only protects Shrum's religious rights in connection with the enactment or enforcement of a law. This position was rejected by the Tenth Circuit in its June 8, 2006 opinion.

**IX. Violation of Free Exercise Through Change of Shift**

Defendants also contend Shrum failed to prove, as required by the Tenth Circuit in its opinion, that Defendants used Shrum's transfer to the day shift for the purpose of interfering with his religious rights or to force Shrum to resign. Although Shrum appears to have failed to respond to this allegation, the evidence is sufficient for a reasonable jury to have concluded that Defendants took the action against Shrum for the express purpose of forcing him to resign – referred to by the Tenth Circuit as using interference with Shrum's religious rights for a secular purpose. The answers to the interrogatories posed by this Court demonstrates the jury's consideration and findings on this issue.

**X. Standard on Defendants' Motion to Alter or Amend**

A motion based in Fed. R. Civ. P. 59(e) is only appropriate "to correct manifest errors of law or to present newly discovered evidence." Loughridge v. Chiles Power Supply Co., Inc., 431 F.3d 1268, 1274-75 (10th Cir. 2005)(citation omitted). In correcting manifest errors of law, a Rule 59(e) motion "may be used to contest verdict inconsistencies. . . ." Id. (citations omitted). "When reviewing claims that a jury verdict is inconsistent, [the reviewing court] must accept any reasonable view of the case that makes the jury's answers inconsistent. . . . The consistency of a jury's verdict must be considered in light of the instructions to the jury, among other factors. . . . To be irreconcilably

15

inconsistent, the jury's answers must be 'logically incompatible, thereby indicating that the jury was confused or abused its power." Id. (citations omitted).

## XI. Inconsistencies in the Jury Award for Lost Pension Benefits

Defendants contend the judgment entered in this case should be altered to reflect the true evidence of lost pension benefits introduced into evidence at trial. Defendants state Shrum's expert, Mr. Cummins only identified damages attributable to Shrum's lost benefits at $49,216.82 plus interest instead of the $125,000.00 awarded by the jury.

For his part, Shrum contends Mr. Cummins calculations were admittedly estimations. Shrum argues his expert included areas of compensation without providing a specific number from which the jury could reasonably have increased the award. These areas include Shrum's length of life in the mortality tables, the beneficiary benefits which was a part of the plan which would have continued to pay Shrum's spouse after his death, loss of employer's pension contribution, the gross amount of income necessary to restore the pre-tax net calculation of his pension benefits, and Defendants' counsel's invitation that the jury should not surrender their judgment to Mr. Cummins simply because he is an expert.

A review of Mr. Cummins testimony solicited at trial reveals

he quantified his estimation of Shrum's lost pension benefits at $49,216.82, with interest accruing to trial to increase the total amount lost at $62,121.48.  *See*, Trial Tr. p. 217, l. 17 through p. 224, l. 11.  No reasonable jury could have exceeded this amount and still have a factual basis in the record for the award.  All of Shrum's proposed bases for increasing the amount to which Mr. Cummins testified would have required the jury to engage in varying degrees of speculation, supposition, assumption, or sympathy to ultimately arrive at the $125,000.00 figure.  Accordingly, the judgment will be amended to reflect the supportable award for lost pension benefits.

IT IS THEREFORE ORDERED that Defendants City of Coweta and Derrick Palmer's Renewed Motion for Judgment as a Matter of Law filed April 13, 2007 (Docket Entry #136) is hereby **DENIED**.

IT IS FURTHER ORDERED that Defendants' Alternative Motion to Correct, Alter and Amend Judgment contained in the same filing is hereby **GRANTED**, in that the judgment is amended to reflect the award for lost pension benefits to Plaintiff Rex Shrum to be $62,121.48.

IT IS SO ORDERED this 28th day of March, 2008.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE